UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRAVE BULK TRANSPORT LTD.,

Plaintiff,

- against -

FIVE OCEAN CORPORATION and TRANFOS CORPORATION,

Defendants.

08 Civ. 1077 (JGK)

ECF CASE

RECEIVED MAY 12 2008 U.S.D.C. S.D. N.Y. CASHIERS

**AMENDED VERIFIED COMPLAINT**

Plaintiff BRAVE BULK TRANSPORT LTD. ("Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Amended Verified Complaint against the Defendants, FIVE OCEAN CORPORATION ("Five Ocean") and TRANFOS CORPORATION ("Tranfos") alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2. At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Liberia.

3. Upon information and belief, Defendant Five Ocean was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Korea.

4. Upon information and belief, Defendant Tranfos was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Korea.

5.   At all material times, Plaintiff was the Charterer and Defendant Five Ocean was the disponent Owner of the motor vessel "TE HO" (hereinafter the "Vessel").

6.   By Fixture Recap and Charter Party dated January 10, 2008 ("Charter Party"), Plaintiff time chartered the Vessel from the Defendant Five Ocean for the carriage of a cargo of Wheat in bulk "FOR ONE TIME CHARTER TRIP VIA SPS/SBS/SAS VIA USG TO IRAQ WIYH WHEAT IN BULK (U.N. APPROVED CARGO ONLY FOR IRAQI PORT(S)." *See Fixture Recap annexed hereto as Exhibit "1".*

7.   By way of a Fixture Note dated December 26, 2007, Plaintiff, entered into a sub-charter party contract with The Ministry of Trade of the Republic of Iraq for shipment of the subject Wheat cargo from the U.S. Gulf to Iraq.

8.   When the Vessel arrived at the load port, the Defendant Five Ocean breached the January 10, 2008 Charter Party in that it failed and refused to perform its obligation to load the subject cargo of wheat and otherwise failed to perform the voyage.

9.   Disputes arose between the parties regarding Defendant Five Ocean's failure to pay Plaintiff for the damages/losses caused by Defendant Five Ocean's breach of the Charter Party.

10.   As a result of Defendant Five Ocean's breach of Charter Party as described above, and as best as can now be estimated, Plaintiff has sustained damages in the principal amount of $2,375,966.10, exclusive of interest, arbitration costs and attorneys fees, comprised of the following:

Expenses incurred up to January 26, 2008:

| | |
|---|---|
| Advance hire paid by Plaintiff to Defendant For the period Jan. 11, 2008 – Jan. 26, 2008: | $1,275,000.00 |
| IFO Fuel/Bunkers paid by Plaintiff on delivery of Vessel into Plaintiff's service: | $ 595,145.00 |
| MDO Fuel/Bunkers paid by Plaintiff on delivery of Vessel into Plaintiff's service: | $ 68,952.00 |
| Cost, Victualizing & Entertainment paid by Plaintiff: | $ 616.44 |
| Additional Fuel/Bunkers supplied to Vessel by Plaintiff at Gibraltar: | $ 136,252.66 |
| Subtotal: | $2,075,966.10 |
| Carrying charges for financing on the Wheat cargo: | $ 300,000.00 |
| Total: | $2,375,966.10 |

11. Plaintiff's damages will continue to accrue during the progress of this matter and, accordingly, Plaintiff reserves the right to supplement, amend and revise its damages as set forth herein.

12. Pursuant to the Charter Party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

13. Despite due demand, Defendant Five Ocean has failed to pay the sums due and owing to Plaintiff.

14. Thus, Plaintiff has commenced arbitration proceedings against Defendant Five Ocean on its claims.

15. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitration proceedings where English law applies. As best as can now be estimated, Plaintiff expects to recover the following amounts in the Final Arbitration Award(s):

|   |   |   |
|---|---|---|
| A. | Principal claim: | $2,375,966.10 |
| B. | Interest on claims:<br>3 years at 7.5%, compounded quarterly | $ 593,317.65 |
| C. | Estimated attorneys' fees and expenses: | $ 400,000.00 |
| D. | Estimated arbitration costs: | $ 70,000.00 |
| **Total** | | **$ 3,439,283.75** |

16. Upon information and belief, Five Ocean uses Tranfos as a "paying/receiving agent" or "pass through" entity such that it can insulate itself from creditors relating to its contracts.

17. It is not general practice in the maritime community, nor anywhere else, for independent companies to make or receive large payments on behalf of other independent companies.

18. Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

19. Upon information and belief, Tranfos sends payments and/or are directed to send payments on Five Ocean's behalf where Tranfos has absolutely no contractual relationship and/or debt to Five Ocean's creditors.

20. Upon information and belief, Tranfos has been directed to make two payments to Five Ocean's creditors in the amounts of $1,069,366.44 each for charter hire payments arising from a Five Ocean charter party.

21. Pursuant to Five Ocean's instructions, on or about March 4, 2008, Tranfos sent a payment in the amount of $1,069,366.44 to Five Ocean's creditor. *See copy of the March 4, 2008 Wire Transaction Summary annexed hereto as Exhibit 2.*

22. Pursuant to Five Ocean's instructions, on or about March 18, 2008, Tranfos sent a payment in the amount of $1,069,366.44 to Five Ocean's creditor. *See copy of the March 18, 2008 Wire Transaction Summary annexed hereto as Exhibit 3.*

23. Five Ocean is a shell-corporation through which Tranfos conducts its business.

24. Five Ocean has no separate, independent identity from Tranfos.

25. Tranfos is the alter-ego of Five Ocean because it dominates and disregards Five Ocean's corporate form to the extent that Tranfos is actually carrying on Five Ocean's business and operations as if the same were its own, or vice versa.

26. Tranfos uses Five Ocean as its "chartering arm" or as a "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations.

27. Five Ocean and Tranfos have the same office address at 7th Floor, Jeong Building, 57-10 Seomamun-dong, Jung-gu, Seoul.

28. Five Ocean and Tranfos have over-lapping officers, directors, owners and/or employees.

29. Cho Mi-Hee is a director of Tranfos and a director of Five Ocean.

30. Based on the foregoing, as well as other activities, Tranfos and Five Ocean should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Tranfos susceptible to attachment and/or restraint for the debts of Five Ocean.

31. By virtue of the foregoing, Tranfos is properly considered a party to the subject contract(s) as the alter ego(s) and/or prime mover(s) and controller(s) of Five Ocean..

32. In the further alternative, Defendants are partners and/or joint venturers such that Tranfos is now, or will soon be, holding assets belonging to Five Ocean, or vice versa.

33. In the further alternative, Defendants are affiliated companies such that Tranfos is now, or will soon be, holding assets belonging to Five Ocean, or vice versa.

34. The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

35. The Plaintiff prays for an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendants held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Amended Verified Complaint;

B. That the Court retain jurisdiction to compel the Defendants to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant

to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendants, in the amount of $3,439,283.75, calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

  D. That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court

  E. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

  F. That this Court award Plaintiff its attorneys' fees and costs of this action;

  G. That this Court grant Plaintiff judgment on the claims set forth herein; and

  H. That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: May 9, 2008
Southport, CT

The Plaintiff,
BRAVE BULK TRANSPORT LTD.

By: ______________________

Patrick F. Lennon
Nancy R. Peterson
Coleen A. McEvoy
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax

## ATTORNEY'S VERIFICATION

State of Connecticut )
) ss.: Town of Fairfield
County of Fairfield )

1. My name is Coleen A. McEvoy.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Amended Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated: May 9, 2008
Southport, Connecticut

Coleen A. McEvoy

# EXHIBIT 1

BBTL

***BRAVE BULK TRANSPORT LTD. OF LIBERIA***

11/01/2008

| ***FIXTURE NOTE*** | |
|---|---|
| ***Vessel*** | **: m/v "TE HO"** |
| ***Owners*** | **: FIVE OCEAN CORPORATION OF SEOUL, KOREA** |
| ***Charterers*** | **: BRAVE BULK TRANSPORT LTD. OF LIBERIA** |
| ***Brokers*** | **: M&F CHARTERING S.A.** |
| ***Charter Party Dated*** | **: 10.01.2008** |

Vessel's Description: m.v. 'TE HO' ***(under Coa No. BV01/08)***

PAN FLAG BLT 2004/ 77,834 MT DWT ON 1 4. 122 M SSW
GRT/NRT 41,372 / 26,094/ LOA/BM 225.0 /32.26 M
HATCH COVER : 2 PANNEL, SIDE ROLLING TYPE
7 HO/7HA, 92,151CBM GR CAPA
H/SIZE : NO.1 17.10 X 13.36M
NO.2-7 17.00 X 15.03M
GRAIN CAPA :
NO.1 12,827 M3
NO.2 13,531 M3
NO.3 13,306 M3
NO.4 13,328 M3
NO.5 13,364 M3
NO.6 13,332 M3
NO.7 12,460 M3
TOTAL GRAIN CAPACITY : 92,151 M3
SPEED/CONS :
ABOUT 14.0 KTS LADEN/ABOUT 15.0 KTS BALLAST (UNDER GOOD WEATHER CONDITIONS NOT EXCEEDING BEAUFORT WIND FORCE 4 / DOUGLAS SEA STATE 3 AND FREE OF ANY ADVERSE CURRENTS.)
CONSUMPTION :
AT SEA - FO (IFO 380 CST) ABT 36.5 MT + DO ABT 0.3 MT PER DAY
IN PORT - IDLE IFO ABT 2.5MT + DO ABT 0.3MT PER DAY/ WORKING IFO 3.5MT + MDO 0.3MT PER DAY
AT INTERMEDIATE CLIMATE CONDITION (PLUS ADDITIONAL DO 0.5MT/DAY AT COLD CLIMATE CONDITION)
VESSEL HAS LIBERTY OF USING MDO WHEN MANOEUVERING IN/OUT OF PORTS, NAVIGATING IN SHALLOW OR RESTRICTED OR BUSY WATERS, CANALS, RIVERS, ESTUARIES AND/OR IN FOGGY WEATHER AND ALSO DURING HOLD CLEANING/BALLASTING OPERATIONS.
AA WOG


**BRAVE BULK TRANSPORT LTD. OF LIBERIA**

**Delivery**

DROPPING LAST OUTWARD SEA PILOT 1SP WCI ITALY NOT EAST OF PASSERO PORT IN OWNS' OPTION ANY TIME DAY OR NIGHT, SUNDAYS AND HOLIDAYS INCLUDED

**Laydays/ Cancelling**

0001HRS 10TH/2359HRS 15TH JANUARY 2008 BFC CANCELLATION CLAUSE TO APPLY (ETA LA SPEZIA 6TH JAN;ETC/D 11TH JAN)

**Time Charter Description**

FOR ONE TIME CHARTER TRIP VIA SPS/SBS/SAS VIA USG TO IRAQ WITH WHEAT IN BULK (U.N. APPROVED CARGO ONLY FOR IRAQI PORT(S))

**Redelivery**

PASSING MUSCAT OUTBOUND ANY TIME DAY OR NIGHT, SUNDAYS AND HOLIDAYS INCLUDED

**Hire**

USD 85,000 DAILY INCLUDING OVERTIME, HIRE PAYABLE EVERY 15 DAYS IN ADVANCE
1ST HIRE PLUS VALUE OF BOD PAYABLE W/I 2 BANKING DAYS AFTER VESSEL'S DELY.

**Bunker Clause**

BOD QTY ABT 1,200MT IFO & ABT 80-100MT MDO.
BOR QTY ABT SAME AS ON DELY
PRICES BENDS USD500/USD800 PMT FOR IFO/MDO RESPECTIVELY.
OWRS TO BUNKER VSL UPTO ABOVE DEL QUANTITY AT GIBRALTAR OR LAS PALMAS, TIME/COST TO BE FOR OWRS' ACCT. IN CASE CHTRS ALSO SUPPLY BUNKER AT GIBRALTAR OR LAS PALMAS,THEN TIME/COST TO BE SHARED ON PRO-RATA BSS.

**Commission**

5.00 PCT TOTAL (3,75PCT ADDRESS + 1,25PCT COMMISSION TO BE SPLIT BETWEEN MNF CHARTERING & SMC)

**Remarks:**

- ILOHC USD 5,000 LUMPSUM



**BRAVE BULK TRANSPORT LTD. OF LIBERIA**

- C/V/E USD 1,250 PER 30 DAYS OR PRORATA

- ***L.O.I: THE CHARTERERS HEREBY STATE THAT THEY WILL INDEMNIFY THE OWNERS IN ACCORDANCE WITH THE OWNERS P&I CLUB WORDING AGAINST ALL CONSEQUENCES ARISING FROM THE OWNERS CONFORMING TO THE CHARTERERS REQUEST TO RELEASE CARGO WITHOUT ORIGINAL BILLS OF LADING.THE CHARTERERS HEREBY SURRENDER A LETTER OF INDEMNITY TO THE OWNERS STRICTLY CONFORMING WITH THE OWNERS P&I CLUB WORDING WITHOUT BANK GUARANTEE.***

- OWS TO ADVISE HOW MUCH CARGO THE VSL CAN LOAD AT STOWAGE FACTOR 42'/42',50" AT 10,5M SWAD AT IRAQ WITHOUT REQUIRING ANY BAGGING/STRAPPING/SECURING.

- ***BIMCO STANDARD "BUNKER FUEL SULPHUR CONTENT CL" & "ISPS/MTSA CL" & "US CUSTOMS ADVANCE/AMS CL" TO BE INSERTED INTO THE C/P, CONTENT AS BELOW:***

- ***BUNKER FUEL SULPHUR CONTENT CLAUSE FOR TIME CHARTER PARTIES 2005:***

(A) WITHOUT PREJUDICE TO ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY, THE CHARTERERS SHALL SUPPLY FUELS OF SUCH SPECIFICATIONS AND GRADES TO PERMIT THE VESSEL, AT ALL TIMES, TO COMPLY WITH THE MAXIMUM SULPHUR CONTENT REQUIREMENTS OF ANY EMISSION CONTROL ZONE WHEN THE VESSEL IS ORDERED TO TRADE WITHIN THAT ZONE.

THE CHARTERERS ALSO WARRANT THAT ANY BUNKER SUPPLIERS, BUNKER CRAFT OPERATORS AND BUNKER SURVEYORS USED BY THE CHARTERERS TO SUPPLY SUCH FUELS SHALL COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI, INCLUDING THE GUIDELINES IN RESPECT OF SAMPLING AND THE PROVISION OF BUNKER DELIVERY NOTES.

THE CHARTERERS SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS IN RESPECT OF ANY LOSS, LIABILITY, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THE CHARTERERS' FAILURE TO COMPLY WITH THIS SUB-CLAUSE (A).

(B) PROVIDED ALWAYS THAT THE CHARTERERS HAVE FULFILLED THEIR OBLIGATIONS IN RESPECT OF THE SUPPLY OF FUELS IN ACCORDANCE WITH SUB-CLAUSE (A), THE OWNERS WARRANT THAT:

(I) THE VESSEL SHALL COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI AND WITH THE REQUIREMENTS OF ANY EMISSION CONTROL ZONE; AND
(II) THE VESSEL SHALL BE ABLE TO CONSUME FUELS OF THE REQUIRED SULPHUR CONTENT

WHEN ORDERED BY THE CHARTERERS TO TRADE WITHIN ANY SUCH ZONE.

SUBJECT TO HAVING SUPPLIED THE VESSEL WITH FUELS IN ACCORDANCE WITH SUB-CLAUSE (A), THE CHARTERERS SHALL NOT OTHERWISE BE LIABLE FOR ANY LOSS, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THE VESSEL'E FAILURE TO COMPLY WITH REGULATIONS 14 AND 18 OF MARPOL ANNEX VI.



(C) FOR THE PURPOSE OF THIS CLAUSE, "EMISSION CONTROL ZONE" SHALL MEAN ZONES AS

STIPULATED IN MARPOL ANNEX VI AND/OR ZONES REGULATED BY REGIONAL AND/OR NATIONAL AUTHORITIES SUCH AS, BUT NOT LIMITED TO, THE EU AND THE US ENVIRONMENTAL PROTECTION AGENCY.

- ***ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005:***

(A)(I) THE OWNERS SHALL COMPLY WITH THE REQUIREMENTS OF THE INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO

CHAPTER XI OF SOLAS (ISPS CODE) RELATING TO THE VESSEL AND VHE COMPANY?(AS DEFINED BY THE ISPS CODE). IF TRADING TO OR FROM THE UNITED STATES OR PASSING THROUGH UNITED STATES WATERS, THE OWNERS SHALL ALSO COMPLY WITH THE REQUIREMENTS OF THE US MARITIME TRANSPORTATION SECURITY ACT 2002 (MTSA) RELATING TO THE VESSEL AND THE OWNER (AS DEFINED BY THE MTSA).

(II) UPON REQUEST THE OWNERS SHALL PROVIDE THE CHARTERERS WITH A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) AND THE FULL STYLE CONTACT DETAILS OF THE COMPANY SECURITY OFFICER (CSO).

(III) LOSS, DAMAGES, EXPENSE OR DELAY (EXCLUDING CONSEQUENTIAL LOSS, DAMAGES, EXPENSE OR DELAY) CAUSED BY FAILURE ON THE PART OF THE OWNERS OR VHE COMPANY?ΞWNER?TO COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE/MTSA OR THIS CLAUSE SHALL BE FOR THE OWNERS?ACCOUNT, EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY.

(B)(I) THE CHARTERERS SHALL PROVIDE THE OWNERS AND THE MASTER WITH THEIR FULL STYLE CONTACT DETAILS AND, UPON REQUEST, ANY OTHER INFORMATION THE OWNERS REQUIRE TO COMPLY WITH THE ISPS CODE/MTSA. WHERE SUB-LETTING IS PERMITTED UNDER

THE TERMS OF THIS CHARTER PARTY, THE CHARTERERS SHALL ENSURE THAT THE CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE OWNERS AND THE MASTER. FURTHERMORE, THE CHARTERERS SHALL ENSURE THAT ALL SUB-CHARTER PARTIES THEY ENTER INTO DURING THE PERIOD OF THIS CHARTER PARTY CONTAIN THE FOLLOWING PROVISION:

6THE CHARTERERS SHALL PROVIDE THE OWNERS WITH THEIR FULL STYLE CONTACT DETAILS AND, WHERE SUB-LETTING IS PERMITTED UNDER THE TERMS OF THE CHARTER PARTY, SHALL

ENSURE THAT THE CONTACT DETAILS OF ALL SUB-CHARTERERS ARE LIKEWISE PROVIDED TO THE OWNERS

(II) LOSS, DAMAGES, EXPENSE OR DELAY (EXCLUDING CONSEQUENTIAL LOSS, DAMAGES, EXPENSE OR DELAY) CAUSED BY FAILURE ON THE PART OF THE CHARTERERS TO COMPLY

 WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS ACCOUNT, EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY.

(C) NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY ALL DELAY, COSTS OR EXPENSES WHATSOEVER ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT AUTHORITY IN ACCORDANCE WITH THE ISPS CODE/MTSA INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, VESSEL ESCORTS, SECURITY FEES OR TAXES AND INSPECTIONS , SHALL BE FOR THE CHARTERERS?ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM THE NEGLIGENCE OF THE OWNERS, MASTER OR CREW. ALL MEASURES REQUIRED BY THE

OWNERS TO COMPLY WITH THE SHIP SECURITY PLAN SHALL BE FOR THE OWNERS?ACCOUNT.

(D) IF EITHER PARTY MAKES ANY PAYMENT WHICH IS FOR THE OTHER PARTY'E ACCOUNT ACCORDING TO THIS CLAUSE, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY.

FOOTNOTE: THIS CLAUSE REPLACES PREVIOUSLY PUBLISHED ISPS CLAUSE FOR TIME CHARTER PARTIES AND THE US SECURITY CLAUSE FOR TIME CHARTER PARTIES, BOTH OF WHICH ARE NOW OFFICIALLY WITHDRAWN.

- ***U.S. CUSTOMS ADVANCE NOTIFICATION/AMS CLAUSE FOR TIME CHARTER PARTIES:***

(A) IF THE VESSEL LOADS OR CARRIES CARGO DESTINED FOR THE US OR PASSING THROUGH US PORTS IN TRANSIT, THE CHARTERERS SHALL COMPLY WITH THE CURRENT US CUSTOMS REGULATIONS (19 CFR 4.7) OR ANY SUBSEQUENT AMENDMENTS THERETO AND SHALL UNDERTAKE THE ROLE OF CARRIER FOR THE PURPOSES OF SUCH REGULATIONS AND SHALL, IN THEIR OWN NAME, TIME AND EXPENSE:

I) HAVE IN PLACE A SCAC (STANDARD CARRIER ALPHA CODE);
II) HAVE IN PLACE AN ICB (INTERNATIONAL CARRIER BOND);
III) PROVIDE THE OWNERS WITH A TIMELY CONFIRMATION OF I) AND II) ABOVE; AND
IV) SUBMIT A CARGO DECLARATION BY AMS (AUTOMATED MANIFEST SYSTEM) TO THE US CUSTOMS AND PROVIDE THE OWNERS AT THE SAME TIME WITH A COPY THEREOF.

(B) THE CHARTERERS ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS AGAINST ANY LOSS AND/OR DAMAGE WHATSOEVER (INCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND/OR ANY EXPENSES, FINES, PENALTIES AND ALL

OTHER CLAIMS OF WHATSOEVER NATURE, INCLUDING BUT NOT LIMITED TO LEGAL COSTS, ARISING FROM THE CHARTERERS FAILURE TO COMPLY WITH ANY OF THE PROVISIONS OF SUB-CLAUSE (A). SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, THE VESSEL SHALL REMAIN ON HIRE.

***BRAVE BULK TRANSPORT LTD. OF LIBERIA***

(C) IF THE CHARTERERS' ICB IS USED TO MEET ANY PENALTIES, DUTIES, TAXES OR OTHER CHARGES WHICH ARE SOLELY THE RESPONSIBILITY OF THE OWNERS, THE OWNERS SHALL PROMPTLY REIMBURSE THE CHARTERERS FOR THOSE AMOUNTS.

(D) THE ASSUMPTION OF THE ROLE OF CARRIER BY THE CHARTERERS PURSUANT TO THIS CLAUSE AND FOR THE PURPOSE OF THE US CUSTOMS REGULATIONS (19 CFR 4.7) SHALL BE WITHOUT PREJUDICE TO THE IDENTITY OF CARRIER UNDER ANY BILL OF LADING, OTHER CONTRACT, LAW OR REGULATION.
///

**Bank Details**

**BENEFICIARY: FIVE OCEAN CORPORATION**
**RESIDENCE: SEOSOMUN, SEOUL**
**COUNTRY: KOREA**
**BANK ACCOUNT NUMBER:650-005142-685**
**SWIFT CODE: KOEXKRSE**
**BANKERS: KOREA EXCHANGE BANK, SEOSOMUN BRANCH**
///

G. LEVENTIS
DIRECTOR CHARTERING DEPARTMENT

I HAVE SEEN THE NEGOTIATIONS EXAMINE
THEM AND APPROVE THEM.

N.H.VAFIAS
***MANAGING DIRECTOR***

# EXHIBIT 2

Transaction Summary Inquiry

| | |
|---|---|
| Legal Text | We have Credited your Account. |
| Account Number | [redacted] |
| Account Name | C TRANSPORT PANAMAX LTD |
| Amount | 1,069,366.43 |
| IBAN Number | [redacted] |
| Branch Number | 600 |
| Customer Number | [redacted] |
| Value Date | 03/04/2008 |
| Currency | USD |
| Branch Name | CITIBANK NA LONDON |
| Customer Name | C TRANSPORT PANAMAX LTD |
| Statement Date | 03/04/2008 |
| Entry Date | 03/04/2008 |
| Bank Name | CITIBANK |
| Customer Reference | C0080643462501 |
| Bank Reference | 3807130095 |
| Branch Tax Id Number | |

Transaction Details

| Field Name | Value |
|---|---|
| Product Type | Funds Transfer |
| Payment Details | O/O TRANFOS CORP MV BULK FERN - 4TH HIRE ISN 046154 OSN 034623 SSN 0254452 /RFB/SWF OF 08/03/04 |
| Ordering Bank Name/Address | TRANFOS CORP |
| Ordering Bank Name/Address | JUNGAN BLDG 7F 57-10 |
| Ordering Bank Name/Address | SEOSOMUN-DONG JUNG-GU SEOUL KOREA |
| Ordering Bank Name/Address | ORDER BANK: KOEXKRSEXXX |
| Ordering Bank Name/Address | KOREA EXCHANGE BANK |
| By Order of Account/ID | 650006370014 |
| By Order Of Name/Address | TRANFOS CORP |
| By Order Of Name/Address | JUNGAN BLDG 7F 57-10 |
| By Order Of Name/Address | SEOSOMUN-DONG JUNG-GU SEOUL KOREA |
| Beneficiary Account/ID | [redacted] |
| Original Amount | 1,069,366.43 |
| Original Currency | USD |

# EXHIBIT 3

# Transaction Summary Inquiry

| Legal Text | We have Credited your Account. |
|---|---|
| Account Number | [redacted] |
| Account Name | C TRANSPORT PANAMAX LTD |
| Amount | 1,069,366.44 |
| IBAN Number | [redacted] |
| Branch Number | 600 |
| Customer Number | [redacted] |
| Value Date | 03/18/2008 |
| Currency | USD |
| Branch Name | CITIBANK NA LONDON |
| Customer Name | C TRANSPORT PANAMAX LTD |
| Statement Date | 03/18/2008 |
| Entry Date | 03/18/2008 |
| Bank Name | CITIBANK |
| Customer Reference | C0080783048601 |
| Bank Reference | 3808763020 |
| Branch Tax Id Number | |

Transaction Details

| Field Name | Value |
|---|---|
| Product Type | Funds Transfer |
| Payment Details | O/O 1/TRANFOS CORP MV BULK FERN - 5TH HIRE ISN 036651 OSN 030497 SSN 0230140 /REB/SHF OF 08/03/18 |
| Ordering Bank Name/Address | 1/TRANFOS CORP |
| Ordering Bank Name/Address | 2/JUNGAN BLDG 7F 57-10 |
| Ordering Bank Name/Address | 3/KR/SEOSOMUN-DONG JUNG-GU SEOUL KO |
| Ordering Bank Name/Address | ORDER BANK: KOEXKRSEXXX |
| Ordering Bank Name/Address | KOREA EXCHANGE BANK |
| By Order of Account/ID | 650006370014 |
| By Order Of Name/Address | 1/TRANFOS CORP |
| By Order Of Name/Address | 2/JUNGAN BLDG 7F 57-10 |
| By Order Of Name/Address | 3/KR/SEOSOMUN-DONG JUNG-GU SEOUL KO |
| Beneficiary Account/ID | [redacted] |
| Original Amount | 1,069,366.44 |
| Original Currency | USD |